E. Carl CARLSON et al., Appellants,

v.

Fred M. TRAWEEK et al., Appellees.

No. 4263.

Court of Civil Appeals of Texas.

Waco.

Feb. 11, 1965.

Rehearing Denied March 4, 1965.

Ragan & Russell, Houston, for appellants.

Baggett, Kirk, Van Keuren & Baggett, Brigman, Lucas, Martin & Douglass, Houston, for appellee.

McDONALD, Chief Justice.

This is an appeal by plaintiffs from an instructed verdict for defendants.

Plaintiff Carlson, et al., brought this suit against defendants Traweek, Stefan, Med-Equip Co. Inc., Whittington and Garrison, "for damages under written contracts." The suit against Stefan, Traweek and Med-Equip Co. Inc. is for damages for breach of a written contract to pay plaintiff a commission, for purchasing for them 51% of the stock of Med-Equip from its owner Whittington. The suit against Whittington and Garrison is for "interfering with plaintiff's contractual rights."

Med-Equip Inc. was owned 49% by Stefan (who was its manager), and 51% by Whittington; (Garrison was Whittington's nephew and trustee of his Med-Equip Co. stock). Med-Equip was insolvent; was obligated to Rotan Company for $60,000; and indebted to Whittington for $159,000. Whittington was an endorser on the Med-Equip obligation to Rotan. Whittington wanted to sell his interest in Med-Equip, if he could be relieved of his endorsement on the Rotan obligation; otherwise he wanted to liquidate the company. Stefan wanted the Med-Equip to stay in business, and interested Traweek, his brother-in-law, in purchasing Whittington's stock.

Plaintiff Carlson was a promoter, and a man who puts projects together. He talked with Garrison about selling Whittington's 51% interest in Med-Equip, and talked with Traweek about purchasing same. The following instruments in writing were entered into:

"April 13, 1962

"Mr. Robert L. Garrison
Med-Equip Co., Inc
Houston, Texas

Dear Mr. Garrison:
"This instrument is to reduce to writing our mutual agreement of our several days of negotiations, of our commitment to purchase the 51% of the issued and outstanding common stock of the above mentioned corporation * * *. We agree to pay the sum of $2641.00 for such shares * * *.

"It is agreed that the holder of the above mentioned stock shall place his certificate in a Bank which shall be mutually agreed upon under an escrow agreement along with our check to cover the purchase price until such time all the terms and conditions herein have been complied with. The owner of such stock being Mr. Harmon Whittington.

"Furthermore, we will agree to negotiate with the Rotan Company * * * and release the personal endorsement of the holder of the 51% of the stock of the corporation, from any further liability. * * *.

"Also Mr. Whittington agrees to release the corporation from any further liability or indebtedness on any and all funds which he has previously

advanced to the corporation to date, which the amount is some $159,000.

\* \* \* \* \* \*

/S/ E. C. Carlson

"Accepted by /S/ Karl Stefan

"Approved by /S/ Robert L. Garrison
  As Trustee for Mr. Harmon Whittington."

"Houston, Texas

"April 17, 1962

"For and in consideration of acting as agent in the purchase of 51% of the issued stock of Med-Equip Co., Carlson shall receive the sum of $3000.

"For further consideration it is agreed that the majority stockholders will retain Carlson in a position of Manager for the Company for at least 1 year with a monthly income of $1000. plus expenses directly connected with the corporation's business and shall be approved by the Board of Directors of Med-Equip Co., Inc.

\* \* \* \* \* \*

/S/ E Carl Carlson

"Approved /S/ Karl Stefan
        /S/ Fred M. Traweek."

The record reflects that Traweek gave Carlson a Cashier's check payable to bearer for $2641. with which to purchase the Whittington stock, but that Carlson was unable to relieve Whittington of liability on the obligation to Rotan, and Garrison (Trustee for Whittington), refused to sell Carlson the stock.

Sometime later Traweek, acting on his own and not through Carlson, secured an acceptable surety for the Rotan obligation, and bought the stock directly from Garrison.

At the conclusion of the evidence the Trial Court granted defendants' motions for instructed verdict, and entered judgment that plaintiff take nothing. Plaintiff appeals on 10 points, contending the Trial Court erred:

1) In not entering judgment for plaintiff for $15,600. against Traweek and Stefan on the written contract.

2) In granting the instructed verdict and in not submitting the case to the jury.

The April 17, 1962 contract upon which plaintiff sues, requires that plaintiff purchase Whittington's stock in Med-Equip for Traweek and Stefan, before he should be entitled to his commission. The April 13, 1962 instrument requires that plaintiff secure release of Whittington's personal liability on the Rotan note, as a condition of Whittington's obligation to sell his Med-Equip stock to plaintiff. The record is undisputed that plaintiff was unable to relieve Whittington of his suretyship obligation to Rotan. Whittington was therefore under no obligation to sell his stock to plaintiff, and refused to do so. Plaintiff did not purchase the stock for Traweek and Stefan, and was not entitled to his commission. Stefan and Traweek did not breach the written contract with plaintiff. There is no evidence that Whittington or Garrison caused or encouraged a breach of such contract; and counsel for plaintiff stated in oral argument that plaintiff had not made out a case against Whittington and Garrison.

The Trial Court did not err in instructing verdict for defendants and in rendering judgment that plaintiff take nothing. Plaintiffs' points and contentions are overruled.

Affirmed.